TARA K. MCGRATH
United States Attorney
JANAKI G. CHOPRA
California Bar No. 272246
NICHOLAS W. PILCHAK
California Bar No. 331711
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8817/9709
janaki.chopra@usdoj.gov
nicholas.pilchak@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN DESTLER (3),<br><br>Defendant. | Case No.: 22-CR-2701-BAS<br><br>Honorable Cynthia A. Bashant<br><br>UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT DESTLER'S MOTION TO COMPEL PRODUCTION OF GRAND JURY TRANSCRIPTS |

The UNITED STATES OF AMERICA, by and through its counsel, TARA K. MCGRATH, United States Attorney, and Janaki G. Chopra and Nicholas W. Pilchak, Assistant U.S. Attorneys, hereby files its Response in Opposition to Defendant Jonathan Destler's Motion to Compel Production of Grand Jury Transcripts.

Based on a handful of claimed discrepancies between his interpretation of the indictment and eight days of trial evidence, Destler claims that he is entitled to review the grand jury transcripts in this case to see if he can find additional evidence in support of his inchoate claims for a constructive amendment or a variance. But his speculation is insufficient to supply "particularized need" to overcome the presumption of grand jury secrecy. The motion for grand jury transcripts should be denied.

# I.

# THE COURT SHOULD DENY DESTLER'S MOTION TO COMPEL PRODUCTION OF GRAND JURY TRANSCRIPTS

**A.  Legal Standard**

Federal Rule of Criminal Procedure 6 permits a court to order disclosure of matters occurring before a grand jury at the request of a defendant who "shows that grounds may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).  A party seeking grand jury transcripts must demonstrate "that a particularized need exists that outweighs the policy of grand jury secrecy." *United States v. Murray*, 751 F.2d 1528, 1533 (9th Cir. 1985).  Mere speculative assertions of wrongdoing in a grand jury proceeding are not enough to meet the 'particularized need' requirement to outweigh the policy of grand jury secrecy. *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980).

The burden is on the defendant to show sufficient grounds that could result in dismissal of the indictment. Fed. R. Crim. P. 6(e)(3)(E)(ii).  But the standard for dismissal is high.  "Dismissal of an indictment [for error in the grand jury proceedings] is considered a 'drastic step' and is generally disfavored as a remedy." *Guam v. Muna*, 999 F.2d 397, 399 (9th Cir. 1993) (citation omitted). "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956). A valid indictment does not require support by "adequate or competent evidence." 350 U.S. at 364. *See also United States v. Garner*, 663 F.2d 834, 840 (9th Cir. 1981) ("When a duly constituted grand jury returns an indictment valid on its face, we have found that no independent inquiry may be made to determine the kind of evidence considered by the grand jury in making its decision.")

Reinforcing the heightened showing that the defendant must meet to obtain grand jury material, courts have upheld indictments in the face of all manner of challenges.

Indictments are upheld if the government does not present exculpatory evidence to the grand jury, *United States v. Williams*, 504 U.S. 36, 51, 112 S. Ct. 1735 (1992); *United States v. Bingham*, 653 F.3d 983, 999 (9th Cir. 2011) (denying motion to dismiss because exculpatory evidence was not presented to the grand jury); does not present all potential impeachment information regarding witnesses, *United States v. Al Mudarris,* 695 F.2d 1182, 1185 (9th Cir.1983) ("The prosecutor has no duty to present to the grand jury all matters bearing on credibility of witnesses or any exculpatory evidence."); relies on hearsay, *United States v. Bergeson*, 425 F.3d 1221, 1226 (9th Cir. 2005) ("All a federal grand jury needs to indict is 'probable cause,' and it can indict based on hearsay."); uses statements obtained in violation of a defendant's Fifth Amendment right against self incrimination, *Lawn v. United States*, 355 U.S. 330 (1958); or presents information that is misleading or inaccurate, *Bank of Nova Scotia,* 487 U.S. at 260–61 (finding no prosecutorial misconduct where IRS agents gave misleading and inaccurate summaries to the grand jury).  And even if there is misconduct, dismissal might not be warranted.  *United States v. Murray,* 751 F.2d 1528, 1533–34 (9th Cir.1985) (holding that the "alleged instances of prosecutorial and grand jury misconduct ... [did] not amount to the particularized need required to outweigh the secrecy of the grand jury proceedings" because the "claimed misconduct would not have compelled the dismissal of the ... indictment"); *United States v. Brown*, 347 F.3d 1095, 1098 (9th Cir. 2003) (sufficient evidence presented in the grand jury to support probable cause even with the allegedly false testimony excised).[1]

---

[1] *See also, e.g., United States v. Casas*, 425 F.3d 23 (1st Cir. 2005) (indictment upheld despite failure to disclose exculpatory evidence); *United States v. Brennick*, 405 F.3d 96 (1st Cir. 2005) (overstatement of evidence); *United States v. Morgan*, 384 F.3d 439 (7th Cir. 2004) (claim of presentation of perjured testimony); *United States v. Kennedy*, 372 F.3d 686 (4th Cir. 2004) (erroneous legal advice to grand jury witness); *United States v. Hickey*, 367 F.3d 888 (9th Cir. 2004) (failure to produce evidence of all elements of the offense); *United States v. Waldon*, 363 F.3d 1103 (11th Cir. 2004) (failure to present exculpatory evidence); *United States v. Soto-Beniquez*, 356 F.3d 1(1st Cir. 2003) (perjured testimony); *United States v. Brown*, 332 F.3d 363 (6th Cir. 2003) (erroneous jury instructions); *United States v. Lopez-Lopez*, 282 F.3d 1 (1st Cir. 2002) (jury instructions).

Moreover, a conviction at trial, which reflects a petit jury's determination of guilt beyond a reasonable doubt, renders harmless any alleged errors that occurred before the grand jury because proof beyond a reasonable doubt renders moot the question of whether there was probable cause to indict. *United States v. Mechanik*, 475 U.S. 66, 72–73 (1986); *United States v. Harmon*, 833 F.3d 1199, 1204 (9th Cir. 2016).

**B.     Destler Has Failed to Justify Piercing Grand Jury Secrecy**

Destler's core argument is that a smattering of perceived discrepancies between two weeks of trial evidence and his reading of the indictment justifies rooting around in the grand jury transcripts to see if he can discover additional ammunition for a claim of constructive amendment or a variance.  Notably, his motion cites zero cases ordering disclosure of grand jury transcripts to pursue a variance or constructive amendment argument under any circumstances, let alone based on four or five purported discontinuities from dozens of hours of testimony.  Indeed, a few moments sprinkled throughout the two weeks of the prosecution's evidence of the defendants' 7-year scheme do not reveal a wholesale abandonment of the charges alleged in the indictment, and provide no basis to overcome the traditional rule of grand jury secrecy.  Defendant Destler's bare speculation that "false, incomplete, and misleading" information must have been presented to the grand jury to secure the indictment has no basis in fact, and, as a matter of law, does not overcome the high burden to invade grand jury secrecy.

Destler ultimately concludes that he is entitled to review the full transcript "so he may evaluate whether he suffered any violations of his rights and assess any available remedies." ECF 336 at 5.  But this has it exactly backwards.  Rule 6(e) requires that Defendant *first* make a "showing" of a basis to believe that misconduct before the grand jury could lead to dismissal of the indictment *before* he can obtain those transcripts.  His quest to have the grand jury transcripts as a discovery tool to help prepare a motion to dismiss the indictment does not constitute a particularized need that outweighs the policy of secrecy.  *See United States v. Johnston*, No. CR-03-1167-PHX-DGC, 2006 WL 276937, at *1 (D. Ariz. Feb. 3,

2006) (request for grand jury transcripts in order to explore whether misconduct occurred is not a particularized need).

For their part, Destler's authorities suggest that a grand jury transcript may be discoverable where necessary to impeach a witness (irrelevant here), attack deposition testimony (same), or refresh a witness's recollection about his prior testimony (same). ECF 336 at 6 (citing cases). Destler's best cited case is apparently a 1980 district court opinion from the Eastern District of Pennsylvania. *United States v. Mahoney*, 495 F.Supp. 1270 (E.D. Pa. 1980). In that case, however, the defendant offered specific examples of purported prosecutorial misconduct in the grand jury—such as failure to summarize prior inconsistent statements when offering broad summaries of prior witness testimony—grounded in a concrete selection of grand jury records he had already reviewed. *Id*. at 1273. Here, Destler offers naked conjecture, not specific examples, and even that conjecture is ill-founded.

### C. Destler's Argument Is Also Factually Unsound

Regardless, the government's trial evidence has been entirely consistent with the charges set forth in the indictment. Far from retreating from the effort to "portray Mr. Destler as a predator and a liar," ECF 336 at 2, the trial proof suggests exactly that, especially considering the evidence of Destler's scheming and collaborating with his co-defendants.

First, the government refrained from describing Allan Brennan as a victim in its opening because this Court issued an order prohibiting that label, upon motion of the defense, not because it had abandoned the indictment's view of Mr. Brennan's situation. In any case, the proof at trial confirms the allegation that Mr. Brennan was "an elderly and vulnerable investor" who "invested millions of dollars in Loop stock in conjunction with the covert sales." Indictment p. 6 ¶ 20. There is also proof that Defendants influenced Mr. Brennan to buy or sell stock "for the purpose of generating for the purpose of generating artificial trading volume and artificially raising and maintaining the price of Loop stock." Indictment p. 8 ¶ 28. The indictment did not allege that Mr. Brennan suffered a net loss of money, or estimate the amount of any such loss. As the defense well knows, the Brennan

estate turned a profit on the Loop stock only after family members got the stock out from under the undue influence of Lazerus on Allan Brennan—influence exercised at the direction of Donald Danks, at a minimum. While this may not meet Destler's definition of a "victim," it hardly disproves the allegations in the indictment. And in any case, the charged crime does not require any proof that the stock price collapsed. Indeed, at the end of trial, the jury will be instructed that it does not need to find a loss of any kind. Whether explicitly labeled as a victim or not, the trial proof shows Allan Brennan to be exactly as described in the indictment.

Destler next argues that the government's trial evidence failed to show that he owned more than 5% of Loop's outstanding shares at the time of his application in July 2015 with Wilson-Davis & Company, Inc. But the cross-examination Destler cites did not establish that he actually owned less than 5%, but merely that the government witnesses supposedly overlooked some (unrecorded) prior private sales that could conceivably have lowered the figure. While Destler may believe he has scored a point on cross examination, it is not evidence of a constructive amendment or even a variance.

Destler next makes a convoluted argument based on UCE-1's testimony about his conversations with Lazerus, in which Lazerus induced him to buy Loop stock based on inside information Lazerus said came from Destler. ECF 336 at 3. Destler's entire point is based on testimony that the UCE-1 *suspected* Lazerus might have gotten the information by misleading Destler. But this does not affect the allegation in the indictment at all. The evidence admitted at trial confirms the allegation as written, which is that Lazerus "told UCE-1 that he obtained this [inside] information from DESTLER, who was in regular communication with the CEO of Loop." Indictment p. 15, ¶ 31(s). While Destler may opine that the grand jury should have been informed of UCE-1's speculation about how Lazerus came by the information—based on conversations UCE-1 was not privy to—this, too, is far afield from evidence of a constructive amendment or variance.

Destler then adds to the indictment the allegation that he conspired to "surreptitiously' sell his Loop shares at inflated prices," and purports to show how this

confected allegation was not true. ECF 336 at 4. The chief problem with this argument is that the indictment contains no such claim. Instead, Destler is alleged to have conspired with co-defendants to "surreptitiously sell Loop stock to investors without disclosing their control over Loop and its stock." Indictment p. 6 ¶ 20. The proof at trial has precisely borne out this allegation as written, irrespective of the straw-man version that Destler prefers to strike down with his calculations of share percentage and average price. Notably, Destler also overlooks two facts directly undercutting this argument. First, his company (Touchstone Advisors Inc.) sold $1.8 million of LOOP stock directly to Allan Brennan. [Destler evidently does not count these sales because they were private transactions, or because Touchstone brokered them for co-defendant David Stephens, or perhaps both.] Second, the indictment also alleges that the Destler and Danks both "use[d] LOOP stock as collateral to obtain margin loans," which the trial proof shows that Destler enthusiastically did to extract value from his artificially inflated LOOP shares. *See* Indictment p.8 ¶ 30. Both facts reinforce that the trial proof is consistent with the charged allegations.

Finally, Destler contends that the government's use of NASDAQ in a one-word opening slide somehow demonstrates a dramatic pivot from the supposedly "abandoned" pump-and-dump allegations in the indictment to some new set of allegations. But the NASDAQ discussion in opening was an event on the narrative timeline of the 7-year scheme: a stop on the way towards higher prices for LOOP. This is entirely consistent with the indictment's allegations. The introductory allegations note that "Loop was uplisted to Nasdaq," and that Touchstone purported to be a company that helped prepare companies for uplisting to major exchanges, of which Nasdaq would be one. Indictment p. 2 ¶ 7; p. 8 ¶ 8. The overt acts include that, *as part of the fraudulent scheme*, "In April 2017, Loop applied to be listed on the Nasdaq stock exchange," and in connection, there were false statements submitted on the Nasdaq application. Indictment p. 11 ¶ 31(j). In fact, the indictment adds that Allan Brennan made enormous purchases of LOOP stock during the run-up to the NASDAQ uplist, which was also directly borne out by the government's proof. A dramatic pivot this was not.

Far from "abandoning" the allegations in the indictment, the jury has heard dozens of hours of testimony confirming the allegations in the indictment. Beyond the government's proof of the "pump-and-dump" aspect of the scheme charged in a single paragraph, the United States respectfully submits that it has introduced substantial evidence of every one of the other twelve "manner and means" paragraphs in the indictment. This powerfully demonstrates that the evidence in this case is consistent with the charges against Destler and his co-defendants.

In other words, the jury has heard plenty of evidence squarely supporting the allegations of the indictment. Nothing in the few examples cited by Destler supplies particularized need for disclosure of grand jury transcripts based on potential dismissal. Simply put, the proof at trial has not deviated from the underlying securities fraud charges.

**D.   Destler Aims at a Target He Cannot Hit**

Even if its factual claims were on firm ground, Destler has not shown any support for a dismissal based on a constructive amendment or variance. At the close of all the evidence, despite all of the responses herein, if the Court has any concern about whether the proof at trial has matched the indictment, it can be addressed with appropriate jury instructions.

**1.   Destler Cannot Show a Constructive Amendment**

"An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir.1984) (quotation omitted). This may occur if the trial judge instructs the jury that a conviction can be premised on conduct outside of that alleged in the indictment -- in other words, expanding the conduct for which the defendant could be found guilty beyond the bounds of the indictment. *United States v. Ward*, 747 F.3d 1184, 1190 (9th Cir. 2014).

A discussion of the seminal case, *Stirone v. United States*, 361 U.S. 212, 214, 80 S. Ct. 270, 271, 4 L. Ed. 2d 252 (1960), is instructive as to the doctrine. In *Stirone*, the defendant was charged with extortion relating to interference with interstate shipments of sand. At trial evidence was admitted regarding the defendant's interference with interstate

shipments of steel, as well as sand, and the judge instructed the jury that guilt could be premised on interference with any interstate shipments. 361 U.S. at 213-14. This expanded the grounds of liability beyond that presented in the indictment, and was held to be a constructive amendment requiring reversal. In *United States v. Ward*, 747, F.3d 1184 (9th Cir. 2014), the defendant was indicted for committing aggravated identity theft as to two named victims. The trial evidence showed that the defendant also victimized four other people, and the prosecution's opening and closing also referred to the other victims. The jury was instructed it could convict if the defendant stole the identity of a "real person," without further specificity. The Ninth Circuit reversed, since the jury may have convicted defendant for conduct for which he was never indicted. *Id*. at 1191-92.

Here, the United States has not proved some other crime. The proof at trial plainly supports the conspiracy, securities fraud, and money laundering charges in the indictment. Whether there are features of the defendants' scheme that the prosecution has chosen to emphasize or diminish—like toning down aspects of the scheme implicating absent co-defendant David Stephens—all the trial proof is geared to showing that defendants schemed to use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities by (a) employing devices, schemes and artifices to defraud, (b) making and causing to be made untrue statements of material fact, and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any persons, including members of the investing public and sellers and purchasers of Loop's securities. In short, the United States is seeking to prove the charges in this indictment—not a hypothetical, different crime.

Destler's fundamental legal error is to presume that the United States has to meet the elements of a crime called a "pump and dump." But the charging language in the indictment alleges that defendants committed securities fraud. A "pump and dump" is simply a convenient shorthand to describe some of the core ways in which defendants' securities

fraud scheme worked. Thus, the fact that defendants believe that the United States hasn't precisely matched their textbook definition of a typical "pump and dump" is irrelevant to the legal question of whether the trial proof amounts to a constructive amendment.

The cases bear out the government's position. In *United States v. Gilak*, 311 Fed. Appx 997, 998 (9th Cir. 2009), for example, the defendant claimed that the evidence at trial was insufficient to prove the pump-and-dump scheme alleged in the indictment. The Ninth Circuit rejected defendant's argument, stating "[a]lthough the indictment used the term 'pump-and-dump' to describe the alleged scheme, the offense charged in the indictment is securities fraud, and the existence of a pump and dump scheme is not a necessary element of a securities fraud violation." *Id*. at 997; *see also United States v. Watts*, 2020 WL 6136211, at *7–10 (E.D.N.Y. Oct. 19, 2020) (unpub.), *aff'd in part and remanded*, 2023 WL 2910634 (2d Cir. Apr. 12, 2023).

In its proposed jury instructions in this case, the United States has set forth the Ninth Circuit Model Jury instructions for the various charges. For securities fraud, the elements require that:

> (1) First, the defendant willfully used a device or scheme to defraud someone, made an untrue statement of a material fact, failed to disclose a material fact that resulted in making the defendant's statements misleading, or engaged in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person;
> (2) Second, the defendant's acts were undertaken, statements were made, or failure to disclose was done in connection with the sale of stock in Loop Industries, Inc.;
> (3) Third, the defendant directly or indirectly used the wires in connection with these acts, making this statement, or this failure to disclose; and
> (4) Fourth, the defendant acted knowingly.

Ninth Circuit Model Jury Instruction § 15.47. There are no elements requiring proof that the stock was dumped by all participants, that a named victim lost money as a result of defendants' scheme, that the defendants profited, that the stock was on NASDAQ, or that

defendants "surreptitiously sold shares at inflated prices" (i.e., engaged in a "pump and dump"). In fact, the jury instructions proposed by the defense similarly – and properly – contain no such added elements. ECF 272, 287, 311.

That the United States may choose to emphasize some manners and means of the scheme, versus others, is of no moment. "Where an indictment charges several offenses, or the commission of one offense in several ways, the withdrawal from the jury's consideration of one offense or one alleged method of committing it does not constitute a forbidden amendment of the indictment." *Salinger v. United States*, 272 U.S. 542, 548-49 (1926). See also *United States v. Miller,* 471 U.S. 130, 140, (1985) (there was no constructive amendment where Miller's indictment properly alleged violations of 18 U.S.C. § 1341, and it fully and clearly set forth a number of ways in which the acts alleged constituted violations, and the facts at trial clearly conformed to one of the theories of the offense contained within that indictment.); *United States v. Wilbur,* 674 F.3d 1160, 1178 (9th Cir.2012) (concluding that there was no impermissible constructive amendment of the indictment, where "the conviction is narrower, rather than broader, than the indictment").

Even if there is concern that conduct unrelated to the charged scheme has been presented—which the United States disputes—the Court has the same ready solution:

> When conduct necessary to satisfy an element of the offense is charged in the indictment and the government's proof at trial includes uncharged conduct that would satisfy the same element, we need some way of assuring that the jury convicted the defendant based solely on the conduct actually charged in the indictment. Typically, *that assurance will be provided by jury instructions requiring the jury to find the conduct charged in the indictment before it may convict*. If the jury instructions do not impose that limitation, however, the defendant's conviction could be based on conduct *not* charged in the indictment. That possibility results in a constructive amendment of the indictment, requiring reversal, because it "destroy[s] the defendant's substantial right to be tried only on charges presented in an indictment.

*Ward*, 747 F.3d at 1191 (9th Cir. 2014) (emphasis added), *citing Stirone*, 361 U.S. at 217.

The proof at trial supports the securities fraud scheme alleged in the indictment. The jury shall be instructed that the charges they are to consider are set forth in the indictment. There has been no constructive amendment here.

### 2. Destler Cannot Show a Fatal Variance

Finally, there has been no variance, much less a fatal one. A variance "occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Ward*, 747 F.3d at 1189 (citation omitted). This doctrine is based on the defendant's Sixth Amendment right "to be informed of the nature and cause of the accusation." U.S. Const. amend. VI.

A variance can be non-prejudicial, as when the differences between the facts alleged in the indictment and those offered at trial are immaterial or otherwise do not prejudice a defendant. *Ward* at 1190. A variance which does not affect the substantial rights of the defendant is harmless error. *United States v. Hazeem*, 679 F.2d 770, 773-74 (9th Cir. 1982).

A variance is not prejudicial if the defendant is provided sufficient information to prepare an adequate defense. *United States v. Laykin*, 886 F.2d 1534, 1542 (9th Cir. 1989) (holding that uncertainty in the trial proof regarding the beginning and ending dates of the crime was not prejudicial). A variance can also be non-prejudicial if the discrepancy is irrelevant to the defendant's culpability. *See Von Stoll*, 726 F.2d at 586-87 (it was a non-prejudicial variance where defendant was charged with illegally transporting funds taken from a named victim, but proof at trial showed the money came from the victim's business partner).

The indictment in this case, like many speaking indictments, contains various sections beyond the charging language and statute, including a manner and means section, and multiple overt acts. Of course, "the government need not prove all facts charged in an indictment; instead, only enough facts to prove the essential elements of the crime must be demonstrated at trial. *United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir. 1986). The defense was certainly on notice of the timing, participants, scope, and manner and means of the securities fraud scheme alleged, particularly by the third trial date set in this case.

Additional pretrial litigation, including extensive motions *in limine*, the exchange of pretrial exhibits, the extensive discovery including trial-preparation witness interview statements, multiple rounds of expert reports, and review of the prosecution's opening statement slides have provided more than adequate notice of the government's case so as to prepare an adequate defense. Indeed, all defendants' vigorous defenses to date demonstrate that they are amply prepared to meet the government's case.

As set out above, Destler's examples do not amount to a prejudicial variance from the indictment. None of the alleged discrepancies go to elements of the charged offense. There is no showing of any prejudice. The evidence at trial is consistent with the charges of conspiracy, securities fraud, and money laundering in the indictment, and all defendants have had abundant notice of the proof against them.

## III.
## CONCLUSION

For the reasons stated herein, the United States respectfully requests that this Court deny Destler's motion for grand jury transcripts.

DATED: August 12, 2024

TARA K. MCGRATH
United States Attorney

/s/ Janaki G. Chopra
JANAKI G. CHOPRA
Assistant United States Attorney

/s/ Nicholas W. Pilchak
NICHOLAS W. PILCHAK
Assistant United States Attorney
